1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCOTT EMERSON FELIX, | Case No.  1:19-cv-01784-AWI-BAM (PC) |
| Plaintiff, | ORDER DENYING PLAINTIFF'S REQUEST FOR JUDICIAL NOTICE (ECF No. 1) |
| v. | |
| CLENDENIN, *et al.*, | ORDER DENYING PLAINTIFF'S MOTION FOR APPOINTMENT OF COUNSEL (ECF No. 45) |
| Defendants. | |
| | FINDINGS AND RECOMMENDATIONS REGARDING DEFENDANTS' MOTION TO DISMISS (ECF No. 42) |
| | **FOURTEEN (14) DAY DEADLINE** |

## I.     <u>Introduction</u>

Plaintiff Scott Emerson Felix ("Plaintiff") is a civil detainee proceeding *pro se* in this civil rights action pursuant to 42 U.S.C. § 1983.  Individuals detained pursuant to California Welfare and Institutions Code § 6600 *et seq.* are civil detainees and are not prisoners within the meaning of the Prison Litigation Reform Act.  *Page v. Torrey*, 201 F.3d 1136, 1140 (9th Cir. 2000).

As Plaintiff is a civil detainee and has paid the filing fee, he is not a prisoner or proceeding *in forma pauperis*, and therefore the Court ordered the complaint to be served without screening.  (ECF No. 13.)  This action therefore proceeds on Plaintiff's complaint, filed

1   December 23, 2019, (ECF No. 1), against Defendants California Department of State Hospitals

2   ("DSH"), Department of State Hospitals – Coalinga ("DSH-Coalinga"), Stephanie Clendenin,

3   Brandon Price, Francis Hicks, and Matthew Zelt.

4         Defendants DSH, DSH-Coalinga, Clendenin, Price, and Hicks filed a motion to dismiss

5   on August 2, 2022.  (ECF No. 42.)  Plaintiff filed an opposition on September 16, 2022, including

6   a renewed request for appointment of counsel and more than 130 pages of exhibits.  (ECF No.

7   45.)  Following an extension of time, Defendants DSH, DSH-Coalinga, Clendenin, Price, and

8   Hicks filed a reply brief.  (ECF No. 48.)  Defendant Zelt joined in the motion to dismiss on

9   October 11, 2022.  (ECF No. 53.)  The motion is deemed submitted.  Local Rule 230(l).

10   **II.**      **Plaintiff's Renewed Request for Appointment of Counsel**

11         Although he is not proceeding *in forma pauperis* in this action, Plaintiff has included a

12   renewed request for appointment of counsel with his opposition.  (ECF No. 45, pp. 136–39.)

13         As noted in prior orders, Plaintiff has filed repeated requests for appointment of counsel,

14   and the Court has repeatedly and summarily denied the same.  (ECF Nos. 21, 25, 36, 39, 57, 66.)

15   The request included in Plaintiff's opposition similarly raises no new arguments or evidence to

16   support a different determination, particularly in light of the Court's findings on Defendants'

17   motion to dismiss.  The motion is denied.

18   **III.**     **Legal Standard on Motion to Dismiss**

19         Rule 12(b)(6) of the Federal Rules of Civil Procedures provides for motions to dismiss for

20   "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  In

21   considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court

22   must accept as true the allegations of the complaint in question, *Erickson v. Pardus*, 551 U.S. 89

23   (2007), and construe the pleading in the light most favorable to the plaintiff.  *Jenkins v.*

24   *McKeithen*, 395 U.S. 411, 421 (1969); *Meek v. Cty. of Riverside*, 183 F.3d 962, 965 (9th Cir.

25   1999).  In ruling on the motion, the court "may generally consider only allegations contained in

26   the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice."

27   *Outdoor Media Grp., Inc. v. City of Beaumont*, 506 F.3d 895, 899 (9th Cir. 2007) (citation and

28   quotation marks omitted).  The court may also consider documents incorporated by reference into

1   the complaint.  *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002).

2          In general, pro se pleadings are held to a less stringent standard than those drafted by

3   lawyers.  *Haines v. Kerner*, 404 U.S. 519, 520 (1972).  The court has an obligation to construe

4   such pleadings liberally.  *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc).

5   However, a court's liberal interpretation of a pro se complaint may not supply essential elements

6   of the claim that were not pled.  *Ivey v. Bd. of Regents of Univ. of Alaska,* 673 F.2d 266, 268 (9th

7   Cir. 1982).  Also, the Court need not credit "naked assertions," "labels and conclusions" or "a

8   formulaic recitation of the elements of a cause of action."  *See Bell Atlantic Corp. v. Twombly*,

9   550 U.S. 544, 555–57 (2007).

10  **IV.     Plaintiff's Allegations**

11         Plaintiff is a civil detainee currently housed at DSH-Coalinga in Coalinga, California,

12  where the events in the complaint are alleged to have occurred.  Plaintiff is an active participant

13  in the Sex Offender Treatment Program ("SOTP") at DSH-Coalinga, which is the only way for a

14  patient that is committed to be released from an indeterminate civil commitment.  Plaintiff names

15  the following defendants: (1) DSH; (2) DSH-Coalinga; (3) Stephanie Clendenin, Acting Director

16  of DSH; (4) Brandon Price, Executive Director of DSH-Coalinga; (5) Francis Hicks, Hospital

17  Administrator of DSH-Coalinga; and (6) Matthew Zelt, Director of Central Program Services at

18  DSH-Coalinga.[1]

19         Plaintiff alleges as follows:

20         Defendants at DSH maintain five facilities: DSH – Atascadero, DSH-Coalinga, DSH –

21  Napa, DSH – Metropolitan, and DSH – Patton.

22         DSH-Coalinga is certified as a State Hospital, and licensed as an Acute Care Psychiatric

23  Hospital.  DSH-Coalinga houses Plaintiff, and other patients committed under the Welfare and

24  Institutions Code ("WIC") §§ 6602 and 6604; Penal Code §§ 1962, 2972, and 2684, along with

25  _____

26  [1] Plaintiff also named John and Jane Does 1–25 who are employees of DSH, and John and Jane
    Does 1–25 who are employees of DSH – Coalinga.  (ECF No. 1, p. 3.)  The undersigned has
27  recommended that these defendants be dismissed for failure to provide identifying information as
    required by Federal Rule of Civil Procedure 4(m).  (ECF No. 46.)  Those findings and
28  recommendations are currently pending before the assigned District Judge.

1    other commitments.

2    Plaintiff, as a civilly detained patient under the Sexually Violent Predator Act ("SVPA,"

3    WIC § 6600, *et seq.*), is without any other ways or means to obtain educational opportunities as a

4    dependent adult under the dependent adult act.  Defendants have deliberately removed/denied

5    educational treatment services, and hindered the release of hundreds of patients, violating

6    Plaintiff's constitutional and civil rights to educational services.  Plaintiff is entitled under the

7    Fourteenth Amendment Due Process Clause for the state to provide civilly committed persons

8    with access to mental health treatment services, according to the SVPA and the Legislature's

9    intent, thus giving them a realistic opportunity to be cured and released.  Adequate and effective

10   treatment is constitutionally required because, absent treatment, and the necessary educational

11   services, the individuals could be held indefinitely as a result of their mental illness.

12   Therefore, Plaintiff alleges that educational services, like vocational services, are an

13   essential part of treatment at DSH-Coalinga, because some of the SOTP that is offered to

14   individuals would need at least three or four years of college education to understand the words,

15   workbooks, and basic definitions, meanings, and terms necessary to advance within the SOTP.

16   At least over 50% of individuals committed to DSH-Coalinga under the SVPA do not

17   have a high school diploma or GED.  There are many individuals who participate in the SOTP,

18   who have grave learning disabilities, and some of them cannot read any of the material for the

19   SOTP, nor are they able to write.

20   Some individuals who have grave developmental disabilities who cannot understand the

21   work in SOTP have been turned away and denied enrollment in the SOTP, while others are

22   assigned to a mentoring class.  Hence, the educational services, and these types of programs in the

23   department, are essential to anyone who is participating in the SOTP.

24   On or about January 2012, adult basic educational classes, special education classes, and

25   pre-GED and GED classes were removed from DSH-Coalinga, by Defendants and their

26   colleagues.  The reason given was a "cost saving" measure.

27   However, in 2012, limited adult basic education, adult special education, and pre-

28   GED/GED programs remained intact at all the other four DSH facilities (Atascadero, Napa,

1    Metropolitan, and Patton).

2            Furthermore, from January 2012 to present, all teaching positions at DSH-Coalinga were

3    eliminated.  Teachers were financed, then retrained, then reassigned to facilitate other DSH-

4    Coalinga treatment groups to affect savings, such as SOTP treatment groups, for the State's

5    financial greed.  Plaintiff alleges that this is a clear indicator that the DSH policies were

6    calculated to the detriment and discrimination of Plaintiff and others similarly situated.

7            Point 1: Plaintiff and Other Patients at DSH-Coalinga are Entitled to Education

8            Plaintiff and other patients were, and are, sent to DSH for care, treatment, and

9    rehabilitation.  Education is core, and an integral part of that is directly linked to a patient's

10   rehabilitation.  Adequate and effective treatment is constitutionally required because, absent

11   treatment, individuals could be held indefinitely.  The State of California Legislature and Courts

12   require the State to treat, educate, and rehabilitate the patient prior to returning the patient back

13   into society for a safe and secure reintegration.

14           Plaintiff and other patients similarly situated at DSH-Coalinga with mental disabilities or

15   developmental disabilities are entitled, as dependent adults, "to participate in publicly supported

16   education" pursuant to the Patient's Bill of Rights.  (*See* California Code of Regulations, Title 9,

17   § 880, *et seq.*)

18           Developmentally disabled patients at DSH-Coalinga are entitled to publicly supported

19   education, and are "even more protected" pursuant to the Developmentally Disability Act.  (*See*

20   Title 42 U.S.C. § 15001, *et seq.*, entitled "Developmentally Disability Act.")

21           As a matter of policy, procedure, and practice, even California Department of Corrections

22   and Rehabilitation ("CDCR") prisoners are provided with Adult Basic Educational services.

23           Therefore, as civil detainees, Plaintiff and others similarly situated are mandated to be

24   provided with adequate education, and effective treatment is constitutionally required because,

25   absent treatment, individuals could be held indefinitely as a result of their mental illness.  This is

26   because the purpose of confinement is not punitive.  The state must also provide the civilly

27   committed with more consideration to their treatment and conditions of confinement than

28   criminals, whose conditions of confinement are designed to punish.  The state must provide

1  civilly committed persons treatment in the less restrictive environment, and this includes Adult

2  Basic Educational Services that are essential for advancement in the SOTP, and successful

3  reentry back into society.

4    Plaintiff and other patients similarly situated at DSH-Coalinga are being denied the right

5  to basic education, along with the right to incorporate pre-GED/GED, adult special education,

6  adult basic education, and special education into treatment plans.  As opposed to the policy and

7  practices of other DSH facilities, where patients are effectively reintegrated back into society

8  after treatment.

9    The DSH State Evaluators under the SVPA routinely evaluate Plaintiff and other patients

10  at DSH-Coalinga, using the Static 99, and other mental health tools like lack of education or

11  failure to complete the WIC § 6600, *et seq.* and the SOTP, as a reason not to release.  Thus, not

12  addressing education has caused a negative evaluation that hinders Plaintiff's and other patients'

13  ability to gain their release back into society.

14    Plaintiff alleges the harm is overwhelming and insurmountable, resulting in Plaintiff's

15  continued incarceration, and that of other patients at DSH-Coalinga who are being held

16  indefinitely, making the entire SVPA punitive, a form of State economic fraud, financial greed

17  via the stigma of the SVPA, and denial of educational services.

18    Part of Defendants' own Mission Statement and Strategic Plan states, "DSH is to provide

19  evaluation, and treatment in a safe and responsible manner, seeking innovation, and excellence in

20  state hospital operations, across a continuum of care and settings. . . ."  (*See* Exhibit 1.)

21    Defendants, from 2012 to present, have failed in their policies, practices, and procedures,

22  to make any Budget Change Proposals ("BCP") requesting additional funding for education or

23  teachers at DSH-Coalinga to replace those eliminated as cost savings measures.  This has harmed

24  and created a treatment obstacle for SOTP patients under the SVPA, and has been a detriment to

25  Plaintiff and others in the DSH-Coalinga patient population.  (*See* Exhibit 2.)

26    DSH-Coalinga knew by converting these teachers to behavior specialists, they would end

27  up facilitating the SOTP groups and receive a greater value of state and federal funds.

28  ///

Plaintiff alleges and also believes that the following Federal (CRIPA) lawsuit by the United States Attorney General's Office (2006), wherein Defendants (formerly known as "Department of Mental Health") were found liable, in addition to the Defendants having likewise found by State Department of Finance auditors to be in deficit of $166 million (2011), subsequently claimed cost saving measures were achieved by cutting DSH-Coalinga's patient educational programs, which was deliberate, and counter productive to the long term care of patients.  (*See* Exhibit 3.)

After diligent research, Plaintiff believes that the site-specific cut of funds, and removal of educational services from DSH-Coalinga alone was financially irresponsible, and motivated for Defendants' financial gain and their long term goals of keeping SVPA patients confined for financial and punitive purposes.  (*See* Exhibit 4.)

Point 2: It is Discriminatory

Plaintiff and other patients similarly situated at DSH-Coalinga with mental disabilities or developmental disabilities, are entitled to education, and are to be provided with equal access. These equal protections and accommodations for educational services are made available to all other patients in the other four DSH facilities.

Other DSH facilities have had education cuts, while still providing the minimal benefits of education.  However, at DSH-Coalinga, education was eliminated.  This was done to harm and to the detriment of Plaintiff and others similarly situated.  Defendants have engaged in discrimination and the denial of equal protection by its policies, practices, and procedures. Defendants have been willfully aware of such harmful practices.  DSH deliberately excluded education at DSH-Coalinga, where Plaintiff resides, for financial gain and to punitively effect its patients, because of their classification as Sexually Violent Predators.

Plaintiff and other patients at DSH-Coalinga are similarly situated to patients housed at other DSH facilities.  There is no commitment type that is housed exclusively within DSH-Coalinga, therefore Plaintiff alleges that a reasonable conclusion can be formed that DSH and DSH-Coalinga officials deliberately excluded the SVPA patients from educational services.

///

1    Plaintiff alleges that the elimination of basic adult education, adult special education, and

2    pre-GED/GED programs by Defendants is clearly arbitrary, discriminatory, and denies equal

3    protection of the law, thus harming Plaintiff and others in like situations when it comes to the

4    patients' required assessments, evaluations, and SOTP treatment and ability to reenter society

5    safely.

6    Defendants knew, or should have known that that mandated educational programs that

7    they eliminated did cause, and will continue to cause harm, and be a direct detriment to Plaintiff

8    and others in like situations.  Defendants continue to violate the California Unruh Civil Rights

9    Act along with the federal civil rights of Plaintiff, and others in like situations, due to their failure

10   to provide reasonable and mandated educational services.  (*See* Exhibit 5; *see also* Exhibit 6.)

11   Point 3: DSH Defendants Acted with Deliberate Indifference

12   As amended in 2012, it was the legislature's intent that DSH shall not eliminate or

13   significantly reduce adult basic education.  Yet this was done to harm and hinder Plaintiff, and

14   others in like situation, specifically in the rehabilitation of patients through the SOTP, for reentry

15   back into society.

16   DSH receives California State Lottery funding for education at the other four DSH

17   facilities.  DSH-Coalinga initially received funding as well.  Plaintiff states that it is unknown if

18   these funds were diverted, but alleges that we know they were deliberately excluded by calculated

19   action of the Defendants.  (*See* Government Code § 8880.5; Appendix A of Title 9 § 400.)

20   As early as December 21, 2011, Plaintiff alleges that it was learned that DSH was about to

21   remove its education programs.  This was when Patient Scott Ewers contacted DSH-Coalinga

22   Civil Detainee Advisory Council ("CDAC") and filed a patient request to keep patient education,

23   showing the removal would negatively affect him and the rest of the DSH-Coalinga population.

24   (*See* Exhibit 7; Exhibit 8.)

25   However, Defendants equivocated and misled Patient Ewers with deceptive responses,

26   and their ability to be successful in their SOTP treatment resulting in harm to his and other

27   patients' civil rights, including their sustentative right to be free from confinement, and placed

28   back into society safely.

1    On February 21, 2012, a Proposal Progress Report was issued by CDAC, and noted

2    comments by former DSH-Coalinga Chief of Psychology, Dr. Alan Azizian, and Dr. Jerry

3    Kasdorf, which fully supported keeping education, and its importance for treatment.  (*See* Exhibit

4    9.)  However, Defendants ignored DSH-Coalinga's own professional leadership

5    recommendations by initiating policies, practices, and procedures to delay, deny, and divert

6    educational funds and programs, to the detriment of Plaintiff and others in a like situation.  (*See*

7    Exhibit 10.)

8    On January 31, 2012, a CDAC memorandum was sent to DSH-Coalinga Treatment

9    Oversight Committee Members asking to keep Literacy,  GED, and other programs available as

10   treatment.  (*See* Exhibit 11.)

11   Subsequently, a proposal written by patients and submitted to Executive Staff outlined

12   cost saving options, and the importance of keeping education to lower criminal recidivism.  (*See*

13   Exhibit 11.)

14   On May 16, 2012, a Treatment Needs Oversight Committee meeting was held, wherein

15   DSH-Coalinga Central Program Services manager Reimi Smith stated: "Keep education

16   department open so that the individuals who want to learn can."  (*See* Exhibit 12.)

17   At the next meeting with CDAC, DSH-Coalinga former Executive Director Audrey King

18   stated: "The only academic programs that will be eliminated are 'special education' courses due

19   to lack of staff trained in Special Education.  Adult Education will continue."  (*See* Exhibit 13.)

20   Plaintiff alleges that this proves not only the State's intent to hinder the DSH-Coalinga patient

21   population's release, but that the teachers DSH-Coalinga had were deliberately converted from

22   teachers to SOTP facilitators for financial gain.

23   Defendants acted under the color of law, have acted arbitrarily, and with deliberate

24   indifference to the rights of Plaintiff, and all others in like situation, thereby contributing to this

25   harm by its policies, practices, and procedures.  This has caused uneducated patients to be

26   delayed in their SOTP treatment and ability to be treated or to complete the SOTP to gain their

27   release back into society safely.

28   ///

Defendants acted with negligence in failing to properly train all DSH-Coalinga personnel in their duties and obligations to Plaintiff and all others in like situation, and their civil and constitutional rights to receive education, due to their failure to provide not only basic education, but special education.  Due to the patient's mental illness or identified disabilities, DSH-Coalinga is obligated to treat and afford them an opportunity to be released.

Defendants knew or should have known that the mandated educational programs that they eliminated did cause, and will continue to cause harm and detriment to Plaintiff and all others in like situation.

As relief, Plaintiff requests appointment of counsel, declaratory and injunctive relief, and compensatory and punitive damages.

**V.      Defendants' Motion to Dismiss**

      **A.      Defendants' Arguments**

Defendants argue that the Eleventh Amendment precludes this suit against the two named state agencies, DSH and DSH-Coalinga.  Plaintiff's Section 1983 claim against the remaining defendants cannot proceed because a civil detainee does not have a federal right to an education. The complaint does not properly allege a substantive due process nor an equal protection violation under the Fourteenth Amendment.

The state law claims are also defective, as Plaintiff fails to allege the necessary protected status to state a claim under the California Unruh Civil Rights Act.  Even if such protected status is alleged, the Unruh Act is limited to "business establishments," and does not permit suit against a state agency and its officials.  Plaintiff's claim under the Patient Bill of Rights, a state regulation, does not establish any enforceable right to an education.  The Developmental Disabilities Assistance and Bill of Rights Act of 2000 does not provide any private right of action.

The federal and state law claims, apparently arising from events commencing in 2012, are also barred by the statute of limitations.  Absent a state government claim, Plaintiff cannot claim monetary damages for violation of the Unruh Act.

Defendants contend that the Court should dismiss the complaint without leave to amend.

///

10

**B.      Plaintiff's Opposition**

Plaintiff argues that Defendants fail to acknowledge his Fourteenth Amendment due process claims, and that he has been denied not just basic and special education mandated under state law, but federal law as well, which prevents completion of legislatively mandated SOTP treatment.  The Eleventh Amendment does not bar recovery against Defendants DSH and DSH-Coalinga because they are governed by state law mandating treatment, rehabilitation, and education, and the Court can establish its own authority over a California State Hospital due to the receipt of federal funding.

Plaintiff has also been discriminated against as compared to patients continuing to receive treatment, rehabilitation, and education at the other four DSH facilities.  Plaintiff's claims under the California Unruh Civil Rights Act are proper because Plaintiff alleges that DSH and DSH-Coalinga act with third party business establishments, including but not limited to, contracting their employees.  Plaintiff again alleges that the state took educational teachers and funds for education and retrained them to deny Plaintiff and others similarly situated of their due process rights and liberty interests.

Plaintiff contends that Defendants' actions are ongoing and commenced in 2012, but Plaintiff was not aware of them until the filing of the complaint.  Plaintiff is not barred by the two-year limitations period as he is currently still suffering from Defendants' acts today.  Plaintiff relies on Exhibit 3 attached to his opposition and argues that he has been illegally committed to DSH custody.

DSH has created a condition of confinement more punitive than the California Department of Corrections, and patients under their care do not even receive the benefits a prisoner receives when placed in California Department of Corrections custody.  These conditions amount to involuntary servitude for the purpose of treatment under the SVPA.

Plaintiff requests that the Court deny Defendants' motion to dismiss, grant Plaintiff's motion for appointment of counsel, and set this matter for trial.

///

///

1  **C.  Defendants' Reply Brief**

2   Defendants contend that Plaintiff does not show that any of the causes of action can

3  proceed.  Plaintiff's claims against DSH and DSH-Coalinga are foreclosed by the Eleventh

4  Amendment, his federal and state law claims cannot overcome the two-year limitations period

5  because his assertions of delayed discovery and continuing accrual are belied by the facts in the

6  complaint, and the claims are substantively defective.  Plaintiff has not opposed the remaining

7  arguments raised in the motion to dismiss and the motion should be granted as unopposed as to

8  those claims.  Plaintiff's complaint should be dismissed without leave to amend.

9  **VI.  Discussion**

10   **A.  Request for Judicial Notice and Exhibits Attached to Plaintiff's Opposition**

11   Plaintiff requests that the Court take judicial notice of Exhibits 1–17 attached to the

12  complaint.  (ECF No. 1, pp. 17–94.)

13   Rule 201(b) of the Federal Rules of Evidence provides that a court may judicially notice a

14  fact that is not subject to reasonable dispute because it: (1) is generally known within the trial

15  court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose

16  accuracy cannot reasonably be questioned.  Fed. R. Evid. 201(b).  Upon review of these exhibits,

17  the Court finds that the unsupported allegations and unverified documents are not the type of facts

18  that are judicially noticeable.  Plaintiff's request for judicial notice is therefore denied.  However,

19  the documents have been considered to the extent they are incorporated into Plaintiff's complaint

20  by reference.  In addition, the Court has considered the allegations raised in Plaintiff's

21  declaration, signed under penalty of perjury.  (ECF No. 1, pp. 93–94.)

22   Defendants object to Plaintiff's proffered Exhibits 1 and 3 attached to his opposition to

23  Defendants' motion to dismiss as irrelevant.  (ECF No. 45, pp. 12–13, 27–135.)  Exhibit 1 is an

24  order from the San Francisco County Superior Court dated October 20, 2006 committing Plaintiff

25  to Atascadero State Hospital for an indeterminate term following a jury finding that Plaintiff is a

26  Sexual Violent Predator.  (*Id.* at 13.)  Exhibit 2 appears to be a petition for a writ of habeas corpus

27  filed with the California Court of Appeal, First Appellate District and a compendium of minute

28  orders, transcript, and other filings attached as exhibits.  (*Id.* at 27–135.)

1    Although neither party has requested the Court take judicial notice of the exhibits attached

2  to Plaintiff's opposition, the Court finds it appropriate to take judicial notice of Exhibits 1 and 3,

3  to the extent that they are state court records.  *See Bias v. Moynihan*, 508 F.3d 1212, 1225 (9th

4  Cir. 2007); *Kasey v. Molybdenum Corp. of Amer.*, 336 F.2d 560, 563 (9th Cir. 1964).

5    As both Exhibits 1 and 3 provide support for the fact of Plaintiff's status as a civil

6  detainee, the Court rejects Defendants' objection to these exhibits as irrelevant.  However, with

7  respect to Exhibit 1, on a Rule 12(b)(6) motion to dismiss, when a court takes judicial notice of

8  another court's opinion, it may do so "not for the truth of the facts recited therein, but for the

9  existence of the opinion, which is not subject to reasonable dispute over its authenticity."  *Lee v.*

10  *City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001), quoting *Southern Cross Overseas*

11  *Agencies, Inc. v. Wah Kwong Shipping Group Ltd.*, 181 F.3d 410, 426–27 (3rd Cir. 1999).

12  Similarly, the Court takes judicial notice of the existence of Exhibit 3, rather than the facts

13  purportedly recited therein.

14    The Court also finds it appropriate to take judicial notice of Plaintiff's Exhibit 2.

15  Defendants have not objected to this exhibit, and rely on it in their reply brief.  (ECF No. 48, p.

16  4.)  Moreover, the information is publicly available on the DSH website.[2]  The Court may take

17  judicial notice of public information and state agency records.  *See In re Yahoo Mail Litig.*, 7 F.

18  Supp. 3d. 1016, 1024 (N.D. Cal. 2014) (court may take judicial notice of information on "publicly

19  accessible websites" not subject to reasonable dispute); *Louis v. McCormick & Schmick*

20  *Restaurant Corp.*, 460 F. Supp. 2d. 1153, 1155 n.4 (C.D. Cal. 2006) (court may take judicial

21  notice of state agency records).

22    **B.**    **Legal Standard on Motion to Dismiss**

23    Rule 12(b)(6) of the Federal Rules of Civil Procedures provides for motions to dismiss for

24  "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  In

25  considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court

26

27  [2] *See* DSH Budget Information; Fiscal Year 2021-2022; 2012-22 Budget Act; DSH 2021-22
   Budget Act Highlights, https://www.dsh.ca.gov/About_Us/DSH_Budget_Information.html (last

28  accessed February 24, 2023).

1   must accept as true the allegations of the complaint in question, *Erickson v. Pardus*, 551 U.S. 89

2   (2007), and construe the pleading in the light most favorable to the plaintiff. *Jenkins v.*

3   *McKeithen*, 395 U.S. 411, 421 (1969); *Meek v. Cty. of Riverside*, 183 F.3d 962, 965 (9th Cir.

4   1999). In ruling on the motion, the court "may generally consider only allegations contained in

5   the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice."

6   *Outdoor Media Grp., Inc. v. City of Beaumont*, 506 F.3d 895, 899 (9th Cir. 2007) (citation and

7   quotation marks omitted). The court may also consider documents incorporated by reference into

8   the complaint. *Van Buskirk v. Cable News Network, Inc*., 284 F.3d 977, 980 (9th Cir. 2002).

9           In general, *pro se* pleadings are held to a less stringent standard than those drafted by

10  lawyers. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). The court has an obligation to construe

11  such pleadings liberally. *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc).

12  However, a court's liberal interpretation of a pro se complaint may not supply essential elements

13  of the claim that were not pled. *Ivey v. Bd. of Regents of Univ. of Alaska,* 673 F.2d 266, 268 (9th

14  Cir. 1982). Also, the court need not credit "naked assertions," "labels and conclusions" or "a

15  formulaic recitation of the elements of a cause of action." *See Bell Atlantic Corp. v. Twombly*,

16  550 U.S. 544, 555–57 (2007).

17          **C.      Eleventh Amendment**

18          "The Eleventh Amendment bars suits for money damages in federal court against a state,

19  its agencies, and state officials acting in their official capacities." *Aholelei v. Dep't of Public*

20  *Safety*, 488 F.3d 1144, 1147 (9th Cir. 2007). Indeed, the Eleventh Amendment prohibits federal

21  courts from hearing a Section 1983 lawsuit in which damages or injunctive relief is sought against

22  a state, its agencies (such as CDCR) or individual prisons, absent "a waiver by the state or a valid

23  congressional override. . . ." *Dittman v. California*, 191 F.3d 1020, 1025 (9th Cir. 1999). "The

24  Eleventh Amendment bars suits which seek either damages or injunctive relief against a state, 'an

25  arm of the state,' its instrumentalities, or its agencies." *See Fireman's Fund Ins. Co. v. City of*

26  *Lodi, Cal.*, 302 F.3d 928, 957 n.28 (9th Cir. 2002) (internal quotation and citations omitted), cert.

27  denied, 538 U.S. 961 (2003). The Department of State Hospitals, and by extension, the

28  Department of State Hospitals – Coalinga, are state agencies. *See*, *Coleman v. Brown*, 2013 WL

6071977, at *2 n.4 (E.D. Cal. Nov. 13, 2013) ("The Department of State Hospitals (DSH) is the current name for the state agency that provides inpatient mental health hospital care for CDCR inmates.")

Contrary to Plaintiff's assertion, the mere receipt of federal funds cannot establish that a State (or its agencies) has consented to suit in federal court. *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 247 (1985). Thus, the fact that DSH or DSH-Coalinga receives funding from the federal government, under the IDEA or any other statute cited by Plaintiff, is not sufficient to find that they have consented to this suit. This pleading deficiency cannot be cured.

### D.      Statute of Limitations

Section 1983 contains no specific statute of limitations. Therefore, federal courts apply the forum state's statute of limitations for personal injury actions. *Jones v. Blanas*, 393 F.3d 918, 927 (9th Cir. 2004); *Maldonado v. Harris*, 370 F.3d 945, 954 (9th Cir. 2004); *Fink v. Shedler*, 192 F.3d 911, 914 (9th Cir. 1999). California's statute of limitations for personal injury actions is two years. Cal. Civ. Proc. Code § 335.1; *Jones*, 393 F.3d at 927; *Maldonado*, 370 F.3d at 954−55.

California's Unruh Civil Rights Act similarly does not have a single statute of limitations. *Gatto v. Cty. of Sonoma*, 98 Cal. App. 4th 744, 759 (2002); *Kemp v. Regents of Univ. of Cal.*, No. C-09-4687 PJH, 2010 WL 2889224, at *6 (N.D. Cal. July 22, 2010). A two-year statute of limitations applies to causes of action under provisions evolving from common law, such as personal injury actions, and a three-year statute of limitations applies to other causes of action. *Gatto*, 98 Cal. App. 4th at 759; *Kemp*, 2010 WL 2889224, at *6.

Federal law determines when a civil rights claim accrues, and "[u]nder federal law, a claim accrues when the plaintiff knows or should know of the injury that is the basis of the cause of action." *Douglas v. Noelle*, 567 F.3d 1103, 1109 (9th Cir. 2009) (citation omitted); *Maldonado*, 370 F.3d at 955; *Fink*, 192 F.3d at 914 (constitutional claim accrues on the date plaintiff knew or should have known of the injury which forms the basis of the cause of action).

In actions where the federal court borrows the state statute of limitations, courts should also borrow all applicable provisions for tolling the limitations found in state law. *Jones*, 393

1    F.3d at 927.  Under California law, the two-year statute of limitations is tolled during the time a

2    prisoner pursues his administrative remedies and is potentially tolled up to an additional two

3    years if Plaintiff is incarcerated for a term of less than life.  *Douglas*, 567 F.3d at 1109 ("State law

4    governs the statute of limitations period for § 1983 suits and closely related questions of tolling.

5    Section 1983 claims are characterized as personal injury suits for statute of limitations purposes"

6    (citations omitted)); *Brown v. Valoff*, 422 F.3d 926, 943 (9th Cir. 2005) ("[T]he applicable statute

7    of limitations must be tolled while a prisoner completes the mandatory exhaustion process."); Cal.

8    Civ. Proc. Code §§ 335.1, 352.1(a).

9        As noted above, Plaintiff is a civil detainee, not a prisoner.  By its terms, Section 352.1

10   does not apply to civil detainees.  *See Jones*, 393 F.3d at 927 ("the literal language of the statute

11   does not cover Jones, a civil detainee").  Nevertheless, by applying California's doctrine of

12   equitable tolling, the Ninth Circuit has found that "a continuously confined civil detainee who has

13   pursued his claim in good faith" may take advantage of tolling.  *Id.* at 930; *see also Fink v.*

14   *Shedler*, 192 F.3d 911, 916 (9th Cir. 1999) (requirements for equitable tolling in California).  The

15   Ninth Circuit found that " 'actual, uninterrupted incarceration is the touchstone' for applying

16   California's tolling provision for the disability of imprisonment," *Jones*, 393 F.3d at 928 (quoting

17   *Elliott v. City of Union City*, 25 F.3d 800, 803 (9th Cir. 1994)), and that the rationale behind the

18   rule "applies with equal force to the case of an individual continuously detained under civil

19   process," *id.*  The Ninth Circuit observed that, "[l]ike criminal inmates, civil detainees litigate

20   under serious disadvantages.  The civilly confined are limited in their ability to interview

21   witnesses and gather evidence, their access to legal materials, their ability to retain counsel, and

22   their ability to monitor the progress of their lawsuit and keep abreast of procedural deadlines."

23   *Id.* at 929.

24       Defendants contend that Plaintiff has been committed to DSH since 1998.  (ECF No. 42-1,

25   p. 12 (citing *Felix v. Hennessy*, 600 F. App'x. 589, 590 (9th Cir 2015) (referring to Plaintiff's

26   1998 commitment proceeding); *Felix v. Hennessy*, 2010 WL3199172, at *1 (N.D. Cal. Aug. 11,

27   2010) (same)).)  Plaintiff appears to confirm Defendants' assertions regarding the date of his

28   original commitment.  (ECF No. 45, pp. 7–8.)  Moreover, the Court has taken judicial notice of

1   Exhibit 1 of Plaintiff's opposition, confirming that Plaintiff was civilly committed by the San

2   Francisco County Superior Court at least as early as October 20, 2006.  (*Id.* at 13.)

3       According to Plaintiff's allegations in the complaint, adult basic educational classes,

4   special education classes, and Pre GED and GED classes and all teaching positions were removed

5   from DSH-Coalinga on or about January 2012.  (ECF No. 1, p. 5.)  Plaintiff further alleges that

6   "as early as the 21st of December 2011, it was learned that the CDSH was about to remove its

7   education programs."  (*Id.* at 10.)  Plaintiff does not specify in the complaint who learned this

8   information at this time.  Defendants state, and nothing in Plaintiff's complaint or opposition

9   contradicts this assertion, that Plaintiff was a resident at the time the educational programs were

10  eliminated in January 2012.  (ECF No. 48, p. 3.)  Defendants therefore argue that Plaintiff's claim

11  accrued with the elimination of the educational programs in January 2012.  However, in his

12  opposition, Plaintiff states that he was not aware of the actions of Defendants "until the filing of

13  the said complaint," (ECF No. 45, p. 7), which was signed and dated December 16, 2019, (ECF

14  No. 1, p. 16).  Plaintiff does not otherwise explain why he was unable to learn this information

15  during the eight years between the programs' elimination and the filing of the complaint.

16      To rely on the delayed discovery of a claim, a plaintiff "must specifically plead facts to

17  show (1) the time and manner of discovery and (2) the inability to have made earlier discovery

18  despite reasonable diligence."  *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 808 (2005)

19  (quoting *McKelvy v. Boeing North American, Inc.*, 74 Cal. App. 4th 151, 160 (1999)).  The

20  plaintiff bears the burden to "show diligence," and "conclusory allegations" will not withstand

21  dismissal.  *Fox*, 35 Cal. 4th at 808.  Plaintiff has failed to allege any facts regarding the time and

22  manner of his discovery, his inability to have made an earlier discovery, or that he conducted any

23  diligent investigation.  The Court therefore rejects his argument as implausible regarding his

24  delayed discovery that his education courses were eliminated, and similarly finds that Plaintiff's

25  conclusory allegations are insufficient to invoke any theory of equitable tolling.

26      To the extent Plaintiff argues that he is subject to ongoing violations of his rights due to

27  the 2012 program elimination, the Court also rejects this theory.  The Ninth Circuit has

28  recognized two applications of the continuing violations doctrine: (1) "a series of related acts, one

17

1   or more of which falls within the limitations period," known as the serial acts branch; and (2) "the

2   maintenance of a discriminatory system both before and during [the limitations] period," known

3   as the systematic branch. *Gutowsky v. Cty. of Placer*, 108 F.3d 256, 259 (9th Cir. 1997) (quoting

4   *Green v. L.A. Cty. Superintendent of Schs.*, 883 F.2d 1472, 1480 (9th Cir. 1989)). The serial acts

5   branch is inapplicable to this case, where Plaintiff alleges a single act that led to continuing and

6   ongoing violations of his rights. The systematic branch originally allowed a plaintiff to recover

7   for acts that occurred prior to the limitations period as long as (1) those acts were conducted

8   pursuant to a policy or practice that remained in effect within the statute of limitations period and

9   (2) the plaintiff remained subject or susceptible to the policy with the limitations period. *See*

10  *Gutowsky*, 108 F. 3d at 260.

11        The Ninth Circuit has since relied upon the Supreme Court's decision in *Nat'l R.R.*

12  *Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002), to abrogate the serial acts branch of the

13  continuing violations doctrine for § 1983 claims, *see Carpinteria Valley Farms, Ltd. v. Cty. of*

14  *Santa Barbara*, 344 F.3d 822, 829 (9th Cir. 2003), as well as the systematic branch, *see Lyons v.*

15  *England*, 307 F.3d 1092, 1107 (9th Cir. 2002). After the decision in *Morgan*, the Ninth Circuit

16  has held that "little remains of the continuing violation doctrine," and with a limited exception for

17  class-wide pattern-or-practice claims, the Ninth Circuit has "consistently refused to apply the

18  systematic branch to rescue individualized claims that are otherwise time-barred." *Bird v. Dep't*

19  *of Human Servs.*, 935 F.3d 738, 748 (9th Cir. 2019) (per curiam).

20        Plaintiff's claims are time barred. Plaintiff cannot use a class wide pattern-or-practice to

21  rescue his time-barred individual claims. Despite his attempts to raise claims on behalf of other

22  detainees, Plaintiff may not represent the interests of a class, *see infra* Section V.F. The

23  continuing violations doctrine is therefore also inapplicable, and Plaintiff's remaining

24  individualized claims under the Unruh Act and section 1983 are barred by the statute of

25  limitations.

26        **E.**    **Right to Education**

27        Even assuming Plaintiff's claims are not barred by the statute of limitations, there is no

28  federal constitutional right to a public education. *See Plyler v. Doe*, 457 U.S. 202, 221 (1982);

*San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 35 (1973).  While "the Fourteenth Amendment Due Process Clause requires states to provide civilly-committed persons with access to mental health treatment that gives them a realistic opportunity to be cured and released," *Sharp v. Weston*, 233 F.3d 1166, 1172 (9th Cir. 2000), Plaintiff states that he is an active participant in the SOTP, "which is the only way for a patient that is committed to be released," (ECF No. 1, p. 2).

Plaintiff argues that educational services are also an essential part of treatment, because some of the SOTP requires at least three or four years of college education to understand the materials necessary to advance within the program.  (ECF No. 1, p. 4.)  Plaintiff further alleges that many individuals committed to DSH-Coalinga under the SVPA do not have a high school diploma or GED, have learning disabilities, and cannot read or write.  (*Id.* at 4–5.)  At no point in the complaint, however, does Plaintiff allege that he personally suffers from any learning disability or difficulty understanding the SOTP curriculum.  (*See id.* at 1–16, 93.)  Furthermore, his pleadings in this action, apparently prepared with no assistance from other individuals, contradict any assertion that Plaintiff is unable to read or write.

Even taking as true that the eliminated educational programs are necessary for individuals with learning disabilities or less than a high school degree to complete the SOTP, there is no indication that Plaintiff is included in this group.  To satisfy constitutional standing requirements, "a plaintiff must show (1) [he] has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 180-81 (2000).  Thus, even if Plaintiff's claims were not barred by the applicable statute of limitations, or if a federal constitutional right to education existed, his claims would fail because Plaintiff has not alleged and cannot allege that his own rights were violated by the elimination of the educational programs.

### F.  No Standing to Sue on Behalf of Other Detainees

Insofar as Plaintiff is attempting to assert claims on behalf of other detainees regarding

1  alleged harm suffered by the elimination of DSH-Coalinga's general educational programs, he

2  may not do so.  Plaintiff may only represent his own legal interests; he may not represent the legal

3  interests of other individuals.  "A litigant appearing in propria persona has no authority to

4  represent anyone other than himself" in a civil rights action.  *Russell v. United States*, 308 F.2d

5  78, 79 (9th Cir. 1962); *see also Weaver v. Wilcox*, 650 F.2d 22, 27 (3rd Cir. 1981) ("[A]n inmate

6  does not have standing to sue on behalf of his fellow prisoners.  Rather, the prisoner must allege a

7  personal loss and seek to vindicate a deprivation of his own constitutional rights."  (citations

8  omitted.)).  "Although a non-attorney may appear *in propria persona* in his own behalf, that

9  privilege is personal to him.  He has no authority to appear as an attorney for others than

10  himself."  *C.E. Pope Equity Trust v. U.S.*, 818 F.2d 696, 697 (9th Cir. 1987) (citations omitted).

11  ### G.    Futility of Amendment

12  For the reasons stated, Plaintiff's complaint fails to state a cognizable claim for relief.

13  Plaintiff's claims against Defendants DSH and DSH-Coalinga are barred by the Eleventh

14  Amendment, Plaintiff's remaining claims are barred by the statute of limitations, and even if

15  Plaintiff could overcome those deficiencies, Plaintiff has failed to allege that he has suffered any

16  harm as a result of Defendants' actions.  The Court further finds that, in light of these deficiencies

17  and Plaintiff's failure to oppose Defendants' remaining arguments, it is unnecessary to address

18  the remaining issues raised in the motion to dismiss.

19  "Under Federal Rule of Civil Procedure 15(a), leave to amend shall be freely given when

20  justice so requires.  However, the district court may exercise its discretion to deny leave to amend

21  due to undue delay, bad faith or dilatory motive on part of the movant, repeated failure to cure

22  deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . , and

23  futility of amendment."  *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892 (9th Cir. 2010)

24  (citations and internal quotation marks and brackets omitted); *see also Lopez v. Smith*, 203 F.3d

25  1122, 1127 (9th Cir. 2000) ("[I]n dismissing for failure to state a claim under Rule 12(b)(6), a

26  district court should grant leave to amend even if no request to amend the pleading was made,

27  unless it determines that the pleading could not possibly be cured by the allegation of other facts."

28  (citation and internal quotation marks omitted)).

The Court has determined that Plaintiff's claims are barred by the Eleventh Amendment, the applicable statute of limitations, and for failure to allege any harm as a result of Defendants' actions.  As there is no indication that Plaintiff can plead any additional facts to cure these defects, it would be futile to grant Plaintiff leave to amend.  *See Platt Elec. Supply, Inc. v. EOFF Elec., Inc.*, 522 F.3d 1049, 1060 (9th Cir. 2008).

**VII.    Order and Recommendation**

Accordingly, IT IS HEREBY ORDERED as follows:

1. Plaintiff's request for judicial notice, (ECF No. 1), is DENIED, as described *supra*, in Section VI.A; and

2. Plaintiff's renewed request for appointment of counsel, (ECF No. 45), is DENIED.


Further, IT IS HEREBY RECOMMENDED that:

1. Defendants' motion to dismiss, (ECF No. 42), be GRANTED; and

2. This action be dismissed, without leave to amend.

* * *

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, under 28 U.S.C. § 636(b)(l).  Within **fourteen (14) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).


IT IS SO ORDERED.

Dated:   **February 27, 2023**          /s/ *Barbara A. McAuliffe*          
UNITED STATES MAGISTRATE JUDGE

21